**UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE**

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF THE ) <br> KIK ACCOUNT ASSOCIATED WITH ) <br> USERNAME "lesttat123" THAT IS ) <br> STORED AT PREMISES CONTROLLED BY ) <br> MEDIALAB, INC. ) <br> _____) | No. 1:21-MJ- <br><br> **Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Tarah E. Rankins, a Special Agent with the Federal Bureau of Investigation ("FBI"), depose and state as follows:

**INTRODUCTION**

1. I make this affidavit in support of an application for a search warrant for content and records associated with a certain Kik user account that is stored at premises owned, maintained, controlled, or operated by MediaLab, Inc., a social networking company headquartered in Santa Monica, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require MediaLab to disclose to the government records and other information in its possession (including the content of communications) pertaining to the subscriber or users associated with the Kik username "lesttat123" (hereinafter referred to as the "SUBJECT ACCOUNT"), which are stored at the premises owned, maintained, controlled, or operated by MediaLab, Inc. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## AGENT BACKGROUND

2.      I have been employed as an FBI Special Agent since 2015, and am currently assigned to the Boston Field Office, Bedford Resident Agency. I am a federal law enforcement officer who is engaged in enforcing criminal laws, including 18 U.S.C. §§ 2251 and 2252A, and I am authorized by the Attorney General to request a search warrant. While employed by the FBI, I have investigated federal criminal violations related to high technology or cyber-crime, child exploitation, and child pornography. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media, including computer media.

## STATUTORY AUTHORITY

3.      This application is part of an investigation into Dennis Bousquet for the alleged knowing sexual exploitation of minors and production, distribution, and possession of visual depictions of minors engaging in sexually explicit conduct (child pornography). 18 U.S.C. § 2251(a) prohibits a person from knowingly employing, using, persuading, inducing, enticing, or coercing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, including the production of child pornography. 18 U.S.C. § 2252A(a)(2) prohibits a person from knowingly distributing any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce, or that has been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(5)(B) prohibits a person from knowingly possessing any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce, or that has

been shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

4. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711(3) and 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i). Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

## BACKGROUND ON KIK SERVICES

5. Through training and experience, as well as Kik's guide for law enforcement and publicly available information, I know that Kik Messenger is a free social networking service owned by MediaLab, Inc., which is headquartered in Santa Monica, California. Through the Kik Messenger application, Kik users can share text messages and other content, including videos and images. Kik users can create groups for communication or sending pictures and videos; they can also exchange private messages, photographs, and videos directly with individual Kik users. Kik users and groups are identified on the Kik app by whatever user name and/or screen name they choose.

6. The Kik application is primarily used on mobile or "smart" devices, such as an Apple iPhone, Android cell phone, Apple iPad, or Android tablet. Although Kik is a platform for mobile devices, there are ways that it can be used on desktop or laptop computers. In order to do so, a person would have to install on the computer what is known as an "emulator," a program that emulates a mobile device environment.

7. Kik allows users to create a profile using a name and an email address. The email address is not verified by Kik. Additionally, Kik does not require a phone number for registration. While on Kik, Kik users can only see other Kik members' display name, user name, and profile picture, which are all chosen by the Kik user.

8. Kik exchanges are called chats, whether they are conducted by text message or video. Kik Messenger allows for group chats with up to 50 participants. The platform also facilitates real-time video chat options for live one-on-one video chat or private group video chats of up to six participants. Chats on Kik Messenger are not viewable remotely. Chats are only viewable through use of Kik user's password and on the device where the user has the application installed.

9. Kik messenger allows individuals to create public or private groups on their server which allows for multiple individuals to communicate and share files. Individuals within the group are also able to privately message other individuals within the group. The creator of the Kik group is called an owner. Through my training and experience I know that the owner of a Kik group is either the individual who made the group or the longest active member after the original owner left the group. The owner of the group can make members of the group administrators which gives them the same privileges as the owner, such as adding individuals and removing them.

10. I am aware that Kik chats can be saved by the user in a variety of ways, including by taking screen shots using the mobile device on which Kik is used. However, once the screen shot has been created, it can easily be shared, saved, or transferred from the mobile device to any other electronic device through email, Bluetooth, or by saving the image to a removable SD card that can then be used to transfer the screen shot to the receiving device.

11.     Kik collects information from and about users of the Kik Messenger application, including personally identifiable information, profile information, message content, conversation attributes, Kik communications, log and data usage information, device information, location information, and local storage information.

**PROBABLE CAUSE**

12.     On March 3, 2021, an FBI Task Force Officer acting in an undercover capacity (hereafter referred to as UC) was conducting an investigation on Kik in an attempt to identify users who were using the platform to exchange child pornography. The UC identified a Kik profile using the screen name "lesttat123", (hereafter referred to as SUBJECT ACCOUNT) in a group known to the UC as a place where people meet, discuss and trade original images of underage children, and links containing child pornography and videos. During the course of the chat between the SUBJECT ACCOUNT and the UC, the user of the SUBJECT ACCOUNT stated he was the father of a five year-old daughter and sent the UC a clothed image of her as well as stating that he "mostly creeper on her asleep" and that he "give[s] her sleeping gummy to help."

13.     During the course of the chats between March 3 and March 15, the user of the SUBJECT ACCOUNT sent the UC several clothed images of the victim and stated "I creep on her while she sleeps I used her feet the other day to stroke me while she slept". The user further stated, "I wanna stick it in her mouth so bad or rub it on her pus".  The photographs sent by the user of the SUBJECT ACCOUNT to the UC depict a number of distinctive household items in the background of the images, including a blue-gray textured carpeting and a large doll house.

14. On March 30, upon entering the Kik chatroom, the SUBJECT ACCOUNT user stated "Hey I'm 30 m new England I have a 5 yo daughter". Upon seeing this the UC initiated a private chat with the SUBJECT ACCOUNT and had the following conversation:

UC: How you been

SUBJECT: Horny u

UC: Same

UC: How is daughter

SUBJECT: Good just went to her dads

UC: Sneak any good pics lately

SUBJECT: Heh yes

At that point in time the user of the user of the SUBJECT ACCOUNT sent the UC two images depicting a prepubescent minor female completely nude standing next to a dresser. Later in the chat the SUBJECT sent the UC two additional images. The first image depicted a nude, prepubescent minor female sitting on her buttocks; her legs were slightly spread and the focus of the image was on the child's vaginal area. Her face was not visible. The second image appeared to depict the same nude child sitting on her buttocks; her legs were spread exposing her bare vagina. The hand of a Caucasian adult male was touching the child's panties near her feet.

15. On March 30, 2021, the FBI submitted an emergency disclosure form to Kik requesting subscriber data for the account associated with user name "lesttat123". Kik's response provided a display name of "Willowbranch", an unconfirmed email address of

temper666@gmail.com, a device description of a Samsung Model SM-N960U and IP logs spanning March 1, 2021 through March 30, 2021. Examination of the IP logs yielded a Charter Communications IP address, 74.78.109.9. This was the only IP address used to access the Kik account during the timeframe provided.

16. On March 30, 2021, the FBI submitted an emergency disclosure form to Charter Communications, requesting subscriber and physical service address information associated with IP address 74.78.109.9. Charter Communication's response identified the subscriber as Ronald Hine, and the service address as 7 Goudie Street #AJ, Lisbon, NH 03585.

17. Through searches of various commercial, law enforcement sensitive, and open source databases, agents identified one Dennis Michael Bousquet, date of birth [REDACTED] 1990, Social Security Number [REDACTED], residing at address 7 Goudie Street, Lisbon, NH.

18. On March 30, 2021 a Federal Search warrant was executed at 7 Goudie Street, Lisbon, NH at approximately 10:10PM.  Present in the house initially was Bousquet's wife, Katrina, and Bousquet's nine-year-old daughter from a previous relationship, Allison.   Shortly after agents' arrival at the residence, Dennis Michael Bousquet returned to the residence from the local Walmart, where he is employed.  During the search of the residence, agents observed the same distinctive blue-gray carpeting (referenced in Paragraph 13) that is visible in the images that the SUBJECT ACCOUNT sent to the UC via Kik.  Bousquet's cell phone, a Samsung Model SM-N960U, was seized during the search. Agents advised Bousquet that he was not under arrest at the time, and Bousquet agreed to speak with Agents outside of 7 Goudie Street, Lisbon, NH.

19. Bousquet was read his *Miranda* rights at approximately 11:05PM and Agents told him again that he was not under arrest at that time nor did he have any obligation to speak with Agents. Bousquet acknowledged that he understood. Bousquet admitted he had used the Kik username "lesttat123" as well as the email address temper666@gmail.com. Bousquet admitted that he accessed Kik on his phone using the WI-FI at 7 Goudie Street, Libson, NH on March 30, 2021, and that he started using Kik in approximately 2019.

20. During the course of the interview, Bousquet admitted to Agents that the photographs described in Paragraph 20, which were sent by the SUBJECT ACCOUNT to the UC via Kik on March 30, 2021, were taken by Bousquet on the morning of March 30, 2021, and that they depict his wife's minor daughter, who resides in their home but also spends time at her biological father's home. At the time that agents were executing the search, the minor victim was not present in the home and was spending the night at her biological father's home. Bousquet further stated that after sharing the images of the minor victim on Kik, he deleted them from his phone. Bousquet further admitted to having engaged in similar conduct with an ex-girlfriend's minor daughter in either 2018 or 2019.

21. On April 1, 2021, the FBI sent a preservation request to Kik pursuant to 18 U.S.C. § 2703(f). An email confirmation was sent by Kik/MediaLab to the FBI on the same day acknowledging receipt of the preservation request.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

22. The evidence believed to be located within the Kik account is listed in Attachment B , which is incorporated by reference as if fully set forth herein, and is believed to be contained on servers and digital storage media maintained by and under the control of MediaLab, Inc., which owns and manages records for Kik. I request authority to search for and seize such material.

23.     This application seeks a warrant to search all responsive records and information under the control of MediaLab, Inc., a provider subject to the jurisdiction of this court, regardless of where MediaLab has chosen to store such information[1]. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within MediaLab's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States.

24.     Pursuant to 18 U.S.C. § 2703(g), this application and affidavit for a search warrant seeks authorization to require MediaLab and its agents and employees, to assist agents in the execution of this warrant. Once issued, the search warrant will be presented to MediaLab with direction that they identify the account described in Attachment A to this affidavit, as well as other subscriber and log records associated with the account, as set forth in Section I of Attachments B to this affidavit. The search warrant will direct MediaLab to create an exact copy of the specified account and records.

25.     I, and/or other law enforcement personnel will thereafter review the copy of the electronically stored data and identify from among that content those items that come within the items identified in Section II to Attachments B for seizure.

---

[1] It is possible that MediaLab, Inc. stores some portion of the information sought outside of the United States. Under the Clarifying Lawful Overseas Use of Data Act ("CLOUD Act"), the Stored Communications Act was amended to require that communications providers in the United States respond to legal process and return relevant data regardless of the location of the servers containing the data.

26.     Analyzing the data contained in the forensic copy may require special technical skills, equipment, and software. It could also be very time-consuming. Searching by keywords, for example, can yield thousands of "hits," each of which must then be reviewed in context by the examiner to determine whether the data is within the scope of the warrant. Merely finding a relevant "hit" does not end the review process. Keywords used originally need to be modified continuously, based on interim results. Certain file formats, moreover, do not lend themselves to keyword searches, as keywords, search text, and many common email, database and spreadsheet applications do not store data as searchable text. The data may be saved, instead, in proprietary non-text format. And, as the volume of storage allotted by service providers increases, the time it takes to properly analyze recovered data increases, as well. Consistent with the foregoing, searching the recovered data for the information subject to seizure pursuant to this warrant may require a range of data analysis techniques and may take weeks or even months. All forensic analysis of the data will employ only those search protocols and methodologies reasonably designed to identify and seize the items identified in Section II of Attachments B to the warrant.

27.     Based on my experience and training, and the experience and training of other agents with whom I have communicated, it is necessary to review and seize a variety of Kik messages and documents that identify any users of the SUBJECT ACCOUNT and messages sent or received in temporal proximity to incriminating messages that provide context to the incriminating communications.

## CONCLUSION

28.     Based on the forgoing, I submit that there is probable cause to believe that the SUBJECT ACCOUNT contains evidence of violations of 18 U.S.C. §§ 2251(a) & (e), 2252A(a)(2), and 2252A(a)(5)(B). I therefore request that the Court issue the proposed search

warrant authorizing a search of the SUBJECT ACCOUNT specified in Attachment A for the items more fully described in Attachment B.

Dated: April 9, 2021                          Respectfully Submitted,

/s/ Tarah Rankins
Tarah Rankins
Special Agent
Federal Bureau of Investigation

The affiant appeared before me by telephonic conference on this date pursuant to Fed. R. Crim. P. 4.1 and affirmed under oath the content of this affidavit and application.

_____
Honorable Andrea K. Johnstone
United States Magistrate Judge
District of New Hampshire
Dated: April 9, 2021

# ATTACHMENT A

## Property to Be Searched

This warrant applies to information associated with the Kik account "lesttat123" (display name: Willowbranch) (the "SUBJECT ACCOUNT"), including information preserved from that account on April 1, 2021 pursuant to a request made under 18 U.S.C. § 2703(f), that is stored at premises owned, maintained, controlled, or operated by MediaLab, Inc., a company based in Santa Monica, California.

Notwithstanding Title 18, United States Code, Section 2252A or similar statute or code, MediaLab shall disclose responsive data, if any, by delivering encrypted files to the United States Attorney's Office, District of New Hampshire, c/o AUSA Kasey Weiland, 53 Pleasant Street, 4th Floor, Concord, New Hampshire 03301 or by email Kasey.weiland2@usdoj.gov.

## ATTACHMENT B

## Particular Things to be Seized

I.  **Information to be disclosed by MediaLab, Inc.**

To the extent that the information described in Attachment A is within the possession, custody, or control of MediaLab, Inc. (hereinafter "the Provider"), regardless of whether such information is stored, held or maintained inside or outside of the United States, including any messages, records, files, logs, or information that has been deleted but is still available to the Provider, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f) on or about April 1, 2021, the Provider is required to disclose the following information to the government for the SUBJECT ACCOUNT listed in Attachment A, from account creation through April 1, 2021:

    a.    All basic subscriber information including, but not limited to:

1. Kik username;
2. Email address, birthdate, and IP address used to register the account;
3. Current email address;
4. Phone number;
5. Device related information;
6. Display name;
7. Link to most current profile picture or background;
8. Kik account creation date and IP address; and
9. Timestamp and IP address of account logins and logouts;

    b.    All IP addresses associated with the SUBJECT ACCOUNT;

    c.    All transactional chat logs associated with the SUBJECT ACCOUNT;

    d.    Images and videos associated with the SUBJECT ACCOUNT including unknown usernames and IP address associated with the sender/recipients of the images and videos;

    e.    A date-stamped log showing the usernames that the SUBJECT ACCOUNT added and/or blocked from account;

  f. All abuse reports associated to the SUBJECT ACCOUNT including unknown usernames;

  g. All messages and emails sent to or from the SUBJECT ACCOUNT;

  h. Any information relating to groups the SUBJECT ACCOUNT belonged to from account creation to April 1, 2021, including but not limited to:

1. Group create log including the creator's username and IP address;
2. Group join logs including the inviter and invitee usernames and IO addresses;
3. Group leave logs including the remover and removed username(s) and IP addresses;
4. Group transactional chat logs including senders IP addresses;
5. Images and videos sent to the group including the sender's and receiver's usernames, and IP address associated to the sender of the images and videos; and
6. Abuse reports including all usernames;

  i. All privacy settings and other account settings, including for individual Kik posts and activities;

  j. All records pertaining to communications between Kik and any person regarding the user or the user's Kik account, including contacts with support services and records of actions taken.

MediaLab is hereby ordered to disclose the above information to the government within 14 days of service of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, contraband, evidence and instrumentalities of violations of 18 U.S.C. § 2251(a) (sexual exploitation of minors), 18 U.S.C. § 2252A(a)(2) (distribution of child pornography), 18 U.S.C. § 2252A(a)(5)(B) (possession of child pornography) those violations found in the SUBJECT ACCOUNT listed on Attachment A, including the following:

a. Information constituting evidence of production, distribution, storage, or solicitation of sexually explicit images or videos of minors;

b. Information constituting evidence of chat threads of a sexual nature relating to minors between the SUBJECT ACCOUNT and other Kik users;

c. Information constituting evidence indicating how and when the Kik accounts were accessed or used to determine the chronological and geographic context of account access, use, and events relating to the crimes under investigation and to the Kik account owner;

d. Information constituting evidence indicating the Kik account owner's state of mind as it relates to the crimes under investigation;

e. Information constituting evidence of the identity of the person(s) who created or used the Kik accounts, including records that help reveal the whereabouts of such person(s); and

f. Information constituting evidence of the identity of any person(s) who communicated with the Kik accounts about matters relating to the crimes under investigation.